2ws129
150  419

# Lowry *against* Hall.

Chattels delivered to the plaintiff after a claim of property by the defendant in a replevin issued out of the Supreme Court of New York, cannot be counter-replevied in Pennsylvania—at least before the question of property has been determined in favour of the defendant in the prior replevin.

The record of such prior replevin may be given in evidence on the plea of property, and need not be specially pleaded.

**ERROR** to the Common Pleas of *Warren* county.

This was an action of replevin in the Common Pleas of Warren county for 900,000 feet of lumber, valued at $9000, which had come from the state of New York by the Conewango river, on its way to a market below. The defendants pleaded property in themselves, and gave in evidence the record of an earlier but pending replevin, issued out of the Supreme Court of New York at the suit of Lowry, one of the plaintiffs in error, against William Hall,

II.—17

one of the defendants in error, and two others, all the parties being inhabitants of New York; on which the sheriff of Chatauque county had delivered the lumber to the plaintiff after a claim of property by the defendant, while the rafts were descending the part of the river which is in that state. As soon as they were brought into Pennsylvania, the present replevin was issued to regain the possession; and the parties claimed respectively under the parties to the replevin in New York. Upon a prayer for specific direction, the judge charged that an adjudication of the question of property in New York, would have been conclusive; but that the mere pendency of an earlier replevin there, was not.

The jury found a verdict for the plaintiffs for the value of the property $8038.59, with $1016.00 damages for detention.

*Galbreath* and *Marvin*, for plaintiff in error. The replevin pending in New York involved the question as to the right of property in the subject-matter of the action. Upon general principles, therefore, the pendency of a prior suit for the same cause of action precludes a recovery by the plaintiff in this action. But the peculiar character of the action of replevin gives to the party to whom the sheriff delivers the subject-matter of it, a right of property in the thing, which cannot be questioned by the other party otherwise than on the trial of the action itself. The party to whom the property is delivered by the officer gives a bond for the benefit of the other party, and as an obligation that he will return the property, if a return be adjudged against him. Why, then, should the party who holds this security for the ultimate return of the property be permitted to institute another remedy to recover it, while the first action is pending? 2 *Rev. Stat. of N. Y.* 522; 5 *Wend.* 21; 15 *Wend.* 324; 2 *Dall.* 68, 131; 4 *Watts* 41. It can not be denied that the proceedings in New York, and the delivery of the property to the plaintiff, gave him at least such a qualified property as precludes the idea of the present plaintiff's right to recover. 7 *Johns.* 140; 1 *Johns.* 380; 7 *Am. Com. Law.* 559; 3 *Pick.* 255; 2 *Watts* 110; 3 *Serg. & Rawle* 20; 1 *Yeates* 197.

All property within the limits of a state is under its control, and subject to its laws. Such a comity between nations is essential to the rights of individuals, and can never be disregarded by the courts of either. *Story's Con. Laws* 30, 34, 36, 463, 495; 13 *Peters* 589; *Story on Bail.* 94; 2 *Mass.* 84; 6 *Mass.* 358; 3 *Wend.* 558; 12 *Wheat.* 358; 6 *Binn.* 361; 11 *Mass.* 256; 13 *Mass.* 155; 14 *Mass.* 301.

*Hazeltine* and *M'Candless, contra*, argued that the proceeding in New York was but a transfer of the possession, involuntary on the part of the plaintiff in this suit, and was but interlocutory, not affecting the right of property. A state, by its laws, may regulate as well the possession as the right to property while it re-

[Lowry v. Hall.]

mains within its jurisdiction; but whenever the persons and the property come within the jurisdiction of another state, the same reason gives to that state the control and jurisdiction. 13 *Wend.* 286. The right of property was not determined by any proceeding in New York, and it is not easy to discover any reason why the courts of Pennsylvania may not entertain jurisdiction to determine that question. 3 *Wend.* 538; 23 *Wend.* 87; *Story's Con. Laws* 346; 6 *Binn.* 353; 5 *Cran.* 289; 2 *Kent* 406; 12 *Wheat.* 361; 1 *Dall.* 206; 20 *Eng. Com. Law* 387; 1 *Wash. C. C.* 376; 5 *Binn.* 353.

A plea in abatement could not have been sustained. A judgment for the same cause of action in another state is the subject of a plea in bar, and not in abatement. 9 *Johns.* 99.

The opinion of the Court was delivered by

Gibson, C. J.—The case of *Johnson* v. *Hunt*, (23 *Wend.* 87), so much relied on, does not touch the point before us. It rules no more than that an insolvent debtor's voluntary assignment of personal property abroad, is not to be affected by process of attachment in the nature of a commission of bankruptcy which operates, as it must, only upon his property at home. The assignment in that case was not procured by coercion of the law of Pennsylvania, where the property happened to be at the time. The absconding debtor gave it to discharge a debt for which he was arrested in execution; and the payment was, in contemplation of law, a voluntary one. The property, being beyond the confines of the state, was neither attached, nor subject to attachment by the law of New York, and might well be dealt with as if the owner were domiciled at the place of the actual situs. The court, therefore, very properly disregarded the supposed lien of the attachment in New York, and held the transfer good by the law of Pennsylvania. The principle of that case is precisely the principle of *Mulliken* v. *Aughinbaugh*, (1 *Penns.* 117), in which an inhabitant of Maryland was not allowed to attach a debt in Pennsylvania which the creditor in Maryland had assigned to obtain a discharge from arrest under the insolvent law of that state; and the same rule would have been applied to an attachment by an inhabitant of Pennsylvania, because, unlike a commission of bankruptcy which is *in invitum*, the proceeding to insolvency was sought by the debtor as a remedy, of which a general assignment of his effects was the price; and because the voluntary transfer of a chattel by the debtor, if it be not forbidden in other respects by the law at the place of the situs, is to be as much regarded there, or elsewhere, as it would be at the place of the domicil. The scope of the American cases is, that an involuntary transfer, by process abroad, within the jurisdiction of the state at the time, will be disregarded only so far as to protect the claims of our own citizens; but in *Abraham* v. *Plestoro*, (3 *Wend.* 538), the rule of

comity was so far narrowed that an assignment under a British commission of bankruptcy was held void against a British creditor not domiciled here, and consequently not having acquired an American character for commercial purposes. This constitutes the difference between the American measure of comity, and the British, which allows a foreign transfer to operate on effects in England, whether it were voluntary or by operation of law.

But moveable property, whose actual situs is in the country of the owner's domicil, is so far subject to the laws in force there, that no foreign tribunal will question the validity of an involuntary transfer of it by operation of them; nor was this principle doubted even in *Abraham* v. *Plestoro,* for the senators who overruled the chancellor and the law judges, seem to have thought that the property was beyond the reach of the British bankrupt laws at the point of time deemed material by them. Indeed, without that, the case would not have a foot to stand on; and even conceding the fact, it is difficult to understand how the principle of comity could be dispensed with in favour of those who had no peculiar claim to the court's protection. As a precedent emanating from the highest judicial authority in New York, that decision must of course rule the law in that state; but the dissenting opinion of Mr Justice Marcy will probably command more respect elsewhere. To sustain a title under a foreign judgment it is sufficient that the court had jurisdiction of the cause and the parties, whether the proceeding were *in personam* or *in rem ;* and it can not be said, in respect of the latter, that there is want of jurisdiction when the thing is subject to the law at the *locus contestationis litis,* and when all men are parties. In the case before us, not only the thing but the litigants were subject to the law of New York. It is emphatically remarked by Mr Justice Story in his Conflict of Laws, that the law protects nothing which it has not a right to regulate; and hence, it is, that he who sends his property abroad, submits it beforehand to all the regulations in force where it is sent. The law of the actual situs, therefore, not only protects the ownership of moveable property, but prescribes the mode of its transfer; and I take it that neither a British nor an American creditor could successfully contest the validity of an assignment under a British commission of bankruptcy, if the property had been in England at the time of the assignment, or perhaps at the time of the act of bankruptcy. That such assignees are allowed to maintain actions in our courts, for any purpose, shows that those laws are permitted to have an operation on the title to property in this country, at least to some extent; and the proper limitation of it seems to be that the principle of comity be not carried so far as to let the effects be withdrawn from our jurisdiction before our own citizens, or domiciled foreign merchants, are satisfied. In all beside, I see no impropriety in suffer-

[Lowry v. Hall.]

ing foreign laws to operate here on the rights and property of those who would be bound by them at home.

Can not, then, a defendant in replevin here, avail himself of a delivery to him, pursuant to a writ of replevin issued out of a court of competent jurisdiction in another state, when not only the litigants but the thing delivered were subject to the law at the place of delivery? The pendency of a prior suit in a foreign country, can not be pleaded in abatement of a suit for the same cause here; and it has been held that the states of the American Union stand in the relation of foreign states as regards this particular matter. Conceding that for the moment, it follows not that the pendency of a proceeding *in rem* may not be so pleaded; and the same may be said of what, in the language of the civil law, are called mixed actions, or those in which a specific thing, as well as performance of a personal obligation, is demanded. Such in all respects are actions of replevin, in which not only the thing taken, but damages for the taking of it, may be recovered. But though there was no attempt in this case to plead the New York replevin in abatement, it was given in evidence; and does it not support the plea in bar? It is requisite that a plaintiff in replevin have not only property, general or special, in the thing taken, but also an immediate right to possess it. (2 *Saund. Pl. & Ev.* 760). For that reason it was said in *Templeman* v. *Case*, (10 *Mod.* 25), that a plaintiff can not maintain replevin for the goods of a stranger taken from the plaintiff's custody, though it was conceded that he might maintain trover, or trespass *de bonis asportatis;* and for the same reason it was said by Chief Justice Parsons in *Isley* v. *Stubbs*, (5 *Mass. R.* 283), that goods attached by an original writ as security for the judgment, can not be replevied. After the execution of the first replevin then, who had a right to the possession of this lumber by the law of New York? Unquestionably not he from whose possession it had been taken by the authority of that law, and committed to the custody of an antagonist claimant, to abide the event of the suit. It is easy to see from *Morris* v. *Dewit*, (5 *Wend.* 71), what would have been the fate of a counter replevin there; and if the court had such jurisdiction of the thing as warranted a particular disposition of it, its authority must be respected here: so that the pinch of the case is to determine whether evidence of the prior delivery supports the plea of property, or whether the fact ought to have been pleaded specifically.

In that state the action of replevin is moulded by a statue, but mainly according to the model of the action as it exists at the common law. Though the inquisition of a sheriff's jury on a claim of property is not evidence of the fact on the trial of the issue in court, it seems that a plaintiff who has received the property from the sheriff, has power to make it his own at all events, inasmuch as the *capias in withernam* is abolished. The writ *de*

*retorno habendo* is retained; yet when the plaintiff has carried the property out of the county, the writ of return can not reach it, and the defendant is necessarily thrown upon his verdict for the value, or on an action on the replevin bond. It is unnecessary to contend that his title becomes absolute in form by the eloignment, for it is enough that the ownership is taken to be in him till his title is disproved by the trial of the issue. But the property has been delivered to him as his own on the basis, real or supposed, of having been wrongfully taken from him; and as possession is *primâ facie* evidence of title, delivery to him after a claim of property which admits the taking, necessarily is so too; at least it settles the right to treat it as his own till it be adjudged to belong to another. The plea of *non cepit* admits the property to be in the plaintiff; and the defendant's claim of property, where he makes it, is as fully rebutted by the inquisition of the sheriff's jury till it be otherwise settled by a trial of the issue, as if it had been waived in the first instance. Such, I take it, would be the state of the case in New York; for the plaintiff in the original action there, would surely have been at liberty to maintain an action against a stranger for an injury to the property during the pendency of the replevin, and *à fortiori*, he might have maintained such an action against the defendant, bound, as he was, to respect the sheriff's delivery with or without an inquisition.

If such, then, would be his relation to the property in that state, it must necessarily be the same in this. An article thus delivered might be a perishable one, and, to preserve it from loss, *might* require it to be consumed or sent to market; and it would be intolerably inconvenient if the defendant in the replevin could follow it into the hands of a purchaser abroad; yet the purchaser of a chattel takes no more than the title of the vendor, except by a sale in market overt, of which we know nothing in practice. Starting as this lumber did from New York, it might, on the principle of the plaintiff's pretension, change masters as often as it arrived within the confines of an intervening state, and leave a lawsuit at each change, not only in New York, but in Pennsylvania, Ohio, Virginia, Kentucky, Indiana, Illinois, Tennessee, Mississippi, and Louisiana. The bare statement of such a thing is proof that it can not be. Whatever be the rule between states that are strangers to each other in commercial and political ties, every member of the American Union is bound for its own sake to observe any degree of comity necessary to avoid consequences so disastrous. That every state is bound to protect the interests of its own citizens in the first place, is undeniable; but it best protects them on the basis of an enlarged reciprocity.

Judgment reversed.