CELESTE, The MARY. See Case No. 9,202.

## Case No. 2,541.

### The CELESTINE.

[1 Biss. 1;[1] 4 Am. Law J. (N. S.) 164; 1 Leg. Int. 6.]

District Court, D. Wisconsin. Sept. Term, 1851.

MARITIME LIENS—DOMESTIC VESSELS —EFFECT OF STATE STATUTE — SEIZURE UNDER STATE LAW— JURISDICTION EXCLUSIVE.

1. The statute of the state of Wisconsin for the collection of demands against domestic boats and vessels, confers no lien.

2. The district court in admiralty has, therefore, no jurisdiction in rem against a domestic vessel at the suit of a domestic creditor.

3. A vessel may be seized under the state law. and from that time the state court and its officers have exclusive jurisdiction and control. A creditor can not in this court obtain any control of the property, or share in the proceeds.

4. The doctrine is well settled that when a court has jurisdiction, it has a right to decide every question arising in the case. and its judgment. until reversed, is binding upon every other tribunal.

5. When the jurisdiction of one court has attached, other creditors must submit their claims to its consideration, or await its disposition of the case.

6. Numerous cases cited and commented upon.

In admiralty. This vessel was attached by the marshal, in pursuance of process issued from this court, upon the libel herein filed, praying a condemnation and sale, to satisfy the demand of this libellant, for materials furnished and work done, in necessary repairs at the port of Racine within this district. The sheriff of Racine county, without submitting himself to the jurisdiction of this court, filed his petition in the form of an answer, setting forth, that previous to the service of the process in this case by the marshal, he had attached and reduced into his possession this vessel, by virtue of an attachment or warrant issued from a court of this state in the county of Racine, at the suit of one Thomas W. Secor in pursuance of a law of this state for the collection of debts and demands against boats and vessels navigating the waters thereof; that the several demands of said

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Secor and of this libellant were contracted within this state; and that both these persons are citizens of this state; and that this vessel was built and is owned within this state. He therefore prayed that the vessel be surrendered into his possession. These facts were conceded by the parties at the trial.

Bush & Sanders, for libellant.
J. R. Doolittle, for respondent.

MILLER, District Judge. The question, whether the law of this state, for the collection of demands against boats and vessels, confers a lien for the debts or demands therein specified, is here properly presented to this court. A similar question has been mooted in this court, and in the courts of other districts, in regard to this law, and similar laws of other states. In the states of New York, Pennsylvania and Maine, local laws exist, creating a lien in favor of material-men and mechanics, upon domestic vessels. In the statutes of New York and Maine the lien is expressly conferred; by the Pennsylvania statute vessels are made liable and chargeable, for materials and work in their construction, until they sail or leave port; and these demands must be first paid. Davis v. New Brig [Case No. 3,643]; Harper v. New Brig [Id. 6,090]. The statute of this state provides that "every boat or vessel, used in navigating the waters of the state, shall be liable for all debts contracted by the master, owner, agent or consignee thereof, on account of supplies furnished for the use of such boat or vessel; or on account of work done or services rendered on such boat or vessel; or on account of labor done or materials furnished by mechanics, tradesmen or others in and for building, repairing, fitting out, furnishing or equipping such boat or vessel; for all sums due for wharfage or anchorage of such boat or vessel within the state; for all demands or damages accruing from the non-performance or mal-performance of any contract of affreightment; or any contract touching the transportation of persons or property entered into by the master, owner, agent or consignee of the boat or vessel on which such contract is to be performed; and for all injuries done to persons or property by such boat or vessel."—"Any person having a demand as aforesaid, instead of proceeding for the recovery thereof against the master, owner, agent or consignee of a boat or vessel, may, at his option, institute suit against such boat or vessel by name;" by filing in the clerk's office a complaint against such boat or vessel by name, and obtaining therefrom a warrant commanding the sheriff to seize the boat or vessel mentioned. Justices of the peace are also authorized to administer this law in cases within their jurisdiction. This law creates a liability on the part of boats and vessels navigating the waters of the state, to suits for the demands therein stated, and limits those suits to one year after the cause of action shall have accrued.—Neither the term lien, nor a term of like import, as chargeable, occurs in the statute. The laws of the states referred to create a lien for supplies, but this law extends to demands for damages accruing from the non-performance or mal-performance of contracts of affreightment, and contracts touching the transportation of persons and property, and injuries done to persons or property by a boat or vessel. If the demands of the material-man and mechanic were alone provided for, as in these other state laws, it would be right and proper to construe this statute as favorably as possible for their protection; but their demands are in the same category with all the other causes of liability.

It has always been the policy of the courts of this country to discourage secret or uncertain liens, as prejudicial to the transfer of property, and to the interests of trade and commerce. Laws creating liens, either upon real estate or personal property, provide for their record, so that the world may be notified of them. There can be no doubt but the design of this statute was to provide additional means for the recovery of the several debts or demands therein specified; but before I should go further and declare all such debts to be liens, I must be thoroughly satisfied, both as to the statute itself, and that the legislature had the power to enact such a statute.

The state laws before alluded to limit the liens to the sailing of the boat or vessel, or to twelve days thereafter; this law limits the commencement of suit to one year after the cause of action shall have accrued. These laws are correct in policy, and can be administered without prejudice to any one. They are confined to domestic vessels, and domestic creditors, and to contracts on shore. Furnishing materials and doing work on domestic vessels are as notorious as the furnishing materials and performing work in the erection of a building. This law does not stop here, but includes all boats and vessels used in navigating the waters of the state, as well foreign as domestic; and also damages arising upon contracts of affreightment, and for injuries done by such boats or vessels to persons or property without regard to locality. Now, neither the policy of this law, nor of the laws of the country, nor the understanding of the people, nor the interests of trade and commerce, favor a secret or unknown lien upon a boat or vessel for uncertain or unliquidated damages. A foreign boat or vessel may be used in navigating the waters of this state; but can the legislature of the state create a lien on such boat or vessel before she enters a port of the state?—This statute does not provide for bringing into court any lien-creditors; nor that any such creditors may inter-

vene for their interests; nor for any notice of the attachment; nor for the sale of the boat or vessel, so as to vest in the purchaser an unincumbered and indefeasible title thereto. It authorizes an order to sell the boat or vessel; which order should be executed and returned in the same manner as executions. And it further provides that "whenever an order of sale shall be made for the sale of a boat or vessel, with its tackle, apparel, and furniture, the sheriff or constable shall have power to sell such part thereof, or such interest therein, as shall be necessary to satisfy the amount of the judgment rendered in favor of the plaintiff, and all the costs that may accrue.· It is questionable whether the officer is authorized to sell more than an interest in, or part of, the boat or vessel, under this statute. It would be preposterous to allege, that under the statute, an officer could sell a boat or vessel, with her tackle, apparel, and furniture, worth thousands, upon an order of sale for a comparatively inconsiderable sum; and that such purchaser should hold such boat or vessel clear of all liens. A lien given by the maritime law is preferred to a bona fide purchaser without notice, and is even preferred to a claim of forfeiture on the part of the government of the United States. The Chusan [Case No. 2,717]; The St. Jago De Cuba, 9 Wheat. [22 U. S.] 409. In the admiralty, all persons having demands against boats or vessels, or interested therein, are permitted to intervene and are presumed to have notice of the proceeding; for this reason a sale in pursuance of a decree in the admiralty confers upon the purchaser an indefeasible title against the world, discharged of all liens whatsoever. Not so under this statute. A purchaser of a boat or vessel or of a part of, or of an interest in, a boat or vessel, under this statute, is in no better condition in regard to liens given by the maritime law, than the original owner. The sale of a part, or of an interest in the boat or vessel is inconsistent with a lien on an entire boat or vessel. A lien enforced in the admiralty requires the sale of the entire vessel, not of a part, or of an interest therein.

As liens on vessels cannot be created by the laws of a state in cases of contract or tort, without the territorial limits, the exigencies of commerce required the summary process of the admiralty, in cases of steamboats and vessels afloat, or employed in business of commerce and navigation on the lakes. For this reason congress passed an act, extending the jurisdiction of the district courts of the United States to certain cases upon the lakes or navigable waters connecting the same. This act was passed February 26, 1845 [5 Stat. 726], and confers quasi admiralty jurisdiction upon the federal courts of contracts and torts arising in, upon, or concerning steamboats and vessels employed in business of commerce and navigation on the lakes. This act was passed in

pursuance of the power vested in congress by section 8 of the constitution of the United States, to regulate commerce with foreign nations and among the several states. The statute of this state, providing for the collection of debts against boats and vessels, was enacted in the year 1838; and was transferred into the present Revised Statutes. As congress had not conferred upon the federal courts the jurisdiction contemplated by the constitution, until the enactment of February, 1845, and as this was a territory, the statute may have been proper until that time, or even until the admission of this state into the Union; but whether it is now operative, or to what extent, under the saving clause of the act of congress of 1845, in regard to foreign vessels navigating the lakes, or demands arising out of the state, is not to be determined at this time, this case not requiring a decision. I merely advert to the point to avoid any misunderstanding of this opinion. I shall merely remark that, generally, where the constitution of the United States confers power of legislation upon congress, state laws become inoperative upon the legislation of congress on the same subject. And state laws have not extra-territorial operation or effect. The case under consideration is in regard to a domestic vessel and domestic creditors, which are proper subjects of state legislation. It is the duty of the state legislature to enact statutes for the control of property belonging to the state, and for the protection of the interests of citizens of the state. From the examination here given of the present statute, I am well satisfied, that it is entirely insufficient for these great purposes. The statute itself does not create "a lien upon boats and vessels, used in navigating the waters of this state;" but the first lien or security created or allowed· is upon the service of the attachment. Such is the decision, in the district court of the United States for the northern district of New York, upon a similar statute of the state of Ohio. The Globe [Case No. 5,484].

It is clear that the state court had jurisdiction, full and complete, of the proceeding referred to, and that this vessel was rightfully and legally attached by the sheriff of Racine county before the filing of the libel or the service of the monition in this case. If, as has been shown, the state law had created a lien, whereby this court can acquire jurisdiction by admiralty process in rem, then there would be concurrent jurisdiction in both courts; and in that case the right to maintain the jurisdiction must attach to that tribunal which first exercises it and takes possession of the thing in litigation. In order to avoid a clashing of jurisdiction, this course is indispensable, and has been enforced in the national courts, in numerous. instances. The authority of the sheriff to attach, and right to hold, this vessel, by virtue of the process in his hands, can not

be questioned. This vessel was in the custody of the law, and the marshal had no right to remove it from the possession of the sheriff. In such cases the marshal or sheriff should either retain the process until the first case is disposed of, or should return it not served on account of a previous attachment or levy, so as to avoid conflict of jurisdiction. The proceeding in the state court is in the nature of a suit in rem, and the necessary result of such proceeding or suit, is, that the thing in litigation is in the custody of the law. It must necessarily be in the possession or under the control of the court, and the court has a right to order it to be taken into the custody of the law. The Robert Fulton [Id. 11,890]; Jennings v. Carson, 4 Cranch [8 U. S.] 2; Peck v. Jenness, 7 How. [48 U. S.] 612. This is not applicable, however, to the case of the paramount right of a libellant to enforce a maritime lien, in preference to an attachment or execution against the owner of a vessel for a simple debt.

The attachment of property, by an officer, presupposes a right to take the possession and custody of that property, and to make such possession and custody exclusive. If the officer attaches upon mesne process, he has a right to hold the possession to answer the exigency of the process. If he levies under an execution, he is bound to sell according to the command of the writ. In Hagan v. Lucas, 10 Pet. [35 U. S.] 400, the sheriff had levied an execution on personal property, which was subsequently levied on by the marshal. Mr. Justice McLean, in delivering the opinion of the court says: "The first levy, whether it were made under the federal or state authority, withdraws the property from the reach of the process of the other. Under the state jurisdiction, a sheriff, having executions in his hands, may levy on the same goods; and, where there is no priority, on the sale of the goods, the proceeds should be applied in proportion to the sums named in the executions. And where a sheriff has made a levy, and afterwards receives executions against the same defendant, he may appropriate any surplus that shall remain after satisfying the first levy, by the order of the court. But the same rule does not govern, where the executions, as in the present case, issue from different jurisdictions. The marshal may apply moneys, collected under several executions, the same as the sheriff. But this cannot be done as between the marshal and the sheriff. A most injurious conflict of jurisdiction would be likely, often, to arise between the federal and the state courts, if the final process of the one could be levied on property which had been taken by the process of the other. The marshal or the sheriff, as the case may be, by a levy, acquires a special property in the goods, and may maintain an action for them. But if the same goods may be taken in execution at the same time by the marshal and the sheriff, does this special property vest in the one, or the other, or both of them? No such case can exist; property once levied on remains in the custody of the law, and it is not liable to be taken by another execution in the hands of a different officer, and especially by an officer acting under a different jurisdiction." This opinion is reiterated in Brown v. Clarke, 4 How. [45 U. S.] 4. In Knox v. Smith, 4 How. [45 U. S.] 298, the property levied on by the marshal was taken from his possession by the sheriff, upon an injunction and process from a state court, similar in effect to a writ of replevin, at the suit of a third person claiming under a deed of trust. A bill filed in the United States court, on the chancery side, to set aside the sheriff's levy, was not sustained because there existed a plain remedy at law. The marshal might have brought trespass against the sheriff, or applied to the United States court for an attachment. In Peck v. Jenness, 7 How. [48 U. S.] 612, an attachment was issued from the state court and served, which, according to the laws and practice of the state of New Hampshire, was a lien on the goods attached. The defendants in the attachment afterwards obtained a discharge under the bankrupt law, and their assignee claimed the goods previously attached. Mr. Justice Grier, in the opinion, says: "It is a doctrine of law too long established to require a citation of authorities, that where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and, whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and, that where the jurisdiction of a court and the right of a plaintiff to prosecute his suit in it have once attached, that right can not be arrested or taken away by proceedings in another court. These rules have their foundation not merely in comity but in necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one if they dare to proceed in the other. Neither can one take property from the custody of the other by replevin or any other process, for this would produce a conflict extremely embarrassing to the administration of justice. In the case of Kennedy v. Earl of Cassillis, 2 Swanst. 313, Lord Eldon at one time granted an injunction to restrain a party from proceeding in a suit pending in the court of sessions, in Scotland, which, on more mature reflection, he dissolved; because it was admitted, if the court of chancery could in that way restrain proceedings in an independent foreign tribunal, the court of sessions might equally enjoin the parties from proceeding in chancery, and thus they would be unable to proceed in either court. The fact, therefore, that an injunction issues only to the parties before the court and not to the court, is no evasion of the difficulties that are the neces-

sary result of an attempt to exercise that power over a party who is a litigant in another and independent forum." The district court was not permitted to oust the state court of its jurisdiction and custody of the property attached. In the case of Slocum v. Mayberry, 2 Wheat. [15 U. S.] 1, replevin was sustained in the state court against a revenue officer, by the owner of goods that were seized without process, and were not such goods as were authorized by law to be seized; as the common law tribunals of the United States were closed by law against such remedies, they being cognizable alone in the admiralty. But in this case and in Gelston v. Hoyt, 3 Wheat. [16 U. S.] 246, it is determined that an action will not lie against the seizing officer in any common law tribunal until a final decree is pronounced in the admiralty upon the proceeding in rem. In the former case, Marshall, C. J., remarks that—"The judiciary act gives to the federal courts, exclusive cognizance of all seizures made on land or water. Any intervention of a state authority, which, by taking the thing seized out of the possession of the officer of the United States, might obstruct the exercise of this jurisdiction, would unquestionably be a violation of the act; and the federal court having cognizance of the seizure might enforce a re-delivery of the thing, by attachment or other summary process against the parties who should divest such a possession. The party supposing himself aggrieved by a seizure, can not, because he considers it tortious, replevy the property out of the custody of the seizing officer, or of the court having cognizance of the cause." "This, however, being an action which takes the thing itself out of the possession of the officer, could not certainly be maintained in a state court, if, by the act of congress, it was seized for the purpose of being proceeded against in the federal court." Goods or vessels attached or levied on, in pursuance of process issued from a court of competent jurisdiction, are thereby reduced into the custody of the court for the purpose of being proceeded against in satisfaction of the process, or of the debt or demand of the plaintiff or libellant, and can not be taken from the possession of the officer making such attachment or levy, upon process emanating from another and different tribunal.

In all cases of concurrent jurisdiction, the court which first has possession of the subject must determine it conclusively. Smith v. McIver, 9 Wheat. [22 U. S.] 532. The party at whose suit property is attached has a constitutional and legal right to the law of the court issuing the process. If, according to the law of the court issuing the process, the property attached is found to belong to the defendant, the plaintiff claims from that court, through its officer, satisfaction of his demand, out of that property. A court of another government and different jurisdiction can not interpose be-

tween that plaintiff and the property attached, and transfer the legal possession, or vest the legal title in a third person, or assume the exclusive custody or disposition of the property. When a party issues his process and attaches property, he is presumed to know his right to do so, according to the law of the court in which he becomes a suitor; and that court is bound to dispose of his cause according to its law. But to compel a suitor in one court to follow the property attached into the forum of a different government, and there contend for satisfaction of his demand according to its law and rulings, would be a grievance and an abuse not to be tolerated; would create a serious conflict of jurisdiction, which should always be avoided by well-regulated courts and all good citizens. Goods and chattels in the possession of a defendant are liable to attachment or levy; and when attached or levied, they are in custody of the law, and control of the court; and must there remain, either in substance or by the substitution of a bond or security according to the law and practice of the court,—until the subject be conclusively determined.

A court may allow subsequent and additional attachments and levies on the same property by its own officer; and may permit goods attached or levied on by one officer to be replevied by another officer, for it still retains control of the several writs, and the custody of the goods, either in kind or by the substitution of a bond in replevin. upon the service of the writ. But this can not be done by different and independent courts. Either one or the other must have custody of the goods,—both courts can not have it; nor can the officers of both have the possession of them. It is altogether a mistake to suppose that a party may claim goods in the custody of the law, and transfer them into the custody of another court, on the plea that he has a demand against them, or that they have been wrongfully taken from him. He must submit his case to the consideration of the court having custody of the goods, or wait until a final disposition be made of them, as in the case of conflicting executions. In D'Wolf v. Harris [Case No. 4,221], replevin was maintained, in the circuit court of the United States against the marshal, for goods seized by him.

A state court has no authority to enjoin a judgment or execution, or restrain a party in a court of the United States; neither can the United States courts interfere with proceedings or suitors in the state courts. McKim v. Voorhies, 7 Cranch [11 U. S.] 279; 3 Story, Const. §§ 1751, 1752; U. S. v. Peters, 5 Cranch [9 U. S.] 115; McClung v. Silliman, 6 Wheat. [19 U. S.] 598; Ex parte Dorr, 3 How. [44 U. S.] 103; Diggs v. Wolcott, 4 Cranch [8 U. S.] 179; Ex parte Cabrera [Case No. 2,278], and many other authorities. Injunctions being specially granted, on con-

sideration of a bill, upon notice and hearing, are not so likely to prejudice a party or embarrass a judicial proceeding, as an attachment, execution or replevin, which are issuable by the clerk upon an affidavit or praecipe. Nor may it work so much injustice by merely restraining the action of a party for a time, as the other writs, which in their nature sweep from him his secured lien. Upon the writ of attachment the officer attaches goods and retains them in possession to satisfy the plaintiff's demand, or delivers them to the defendant on his bond. Upon an execution the officer makes sale—upon replevin he delivers the goods to the plaintiff on his giving bond for a return, or the value, with damages, without any judgment of a court on the question of title or any inquisition by the officer, or writ de proprietate probanda. The party or person obtaining possession by process of law has the legal possession. The possession of the party served with the process is transferred to him, and the security of the original plaintiff in the goods is gone. Lowry v. Hall, 2 Watts & S. 129; Morris v. De Witt, 5 Wend. 71.

The pendency of a replevin in a state court, to settle the right of property in a vessel, is a bar to a libel in the admiralty, to settle the same right between the same parties; not technically a bar as a plea of lis pendens, but effectively so to prevent conflict of jurisdiction. Taylor v. The Royal Saxon [Case No. 13,803]. And an attachment for the debt by the process of a state court, after the commencement of the suit for the recovery of that debt in a court of the United States cannot affect the right of the plaintiff to recover in the suit. Wallace v. McConnell, 13 Pet. [38 U. S.] 136; Campbell v. Emerson [Case No. 2,357].

The governments of the United States and of the several states are sovereign and independent within their respective limits as prescribed in their several constitutions. Equally so are the courts of the respective governments independent of each other. One court has no power to supervise, or enjoin, or interfere with the proceedings in the other, excepting where authorized in pursuance of provisions contained in the constitution of the United States; in cases of decisions in state courts against the constitution, or a treaty, or law, or authority, or officer of the United States; and in the removal of causes to the circuit courts, or district courts having circuit court powers, by aliens or non-resident defendants; and where citizens of the same state claim lands under a grant from another state.

I have investigated this case sufficiently to satisfy my mind that this court has no jurisdiction in admiralty; and that, if it had, this vessel, being previously attached by the sheriff of Racine county and in the custody of the law, could not be subsequently attached by the marshal. It is thereupon ordered, that this libel be dismissed, and that the marshal return this vessel to the possession of the sheriff of Racine county.

NOTE [from original report]. Later rulings of the supreme court maintain the jurisdiction in rem under state laws in certain cases. The St. Lawrence, 1 Black [66 U. S.] 522, and cases there cited. It is there ruled that the change in the 12th rule in admiralty, meant merely that various considerations made it advisable not to permit that particular form of process to be used by persons who might claim it on the sole ground that the state law gave them a lien, where none was given by the maritime code. Where the lien is claimed as arising out of private contract with the owner, it will be enforced against a domestic vessel. The Kalorama, 10 Wall. [77 U. S.] 204. Or where there is a possessory lien at common law. The Marion [Case No. 9,087]. That the state law of Kentucky creating liens on domestic vessels does not confer jurisdiction on the courts of the United States was decided in Roach v. Chapman, 22 How. [63 U. S.] 129, citing People's Ferry Co. v. Beers, 20 How. [61 U. S.] 393. For the proper rules in cases where conflicting claims are set up under state and federal jurisdiction, see the following cases, elaborately argued and decided: Taylor v. Carryl, 20 How. [61 U. S.] 583; Freeman v. Howe, 24 How. [65 U. S.] 450. Where a vessel had been seized under process from a state court, proceedings under a libel are irregular. A seizure by the marshal when the vessel was in the actual and legal possession of the sheriff, does not give jurisdiction in rem. The admiralty jurisdiction of the United States courts, though exclusive on some subjects, is concurrent on others. Taylor v. Carryl, 20 How. [61 U. S.] 583; see also The John Richards [Case No. 7,361]. But the possession of the sheriff does not defeat the operation of the revenue laws. U. S. v. The Reindeer [Id. 16,-144]. As to effect of state statute, see opinions of Sherman, J., in Re Dwight Scott [Id. 12,517]; also of Longyear, J., in Moir v. The Du Buque [Id. 9,696]. That liens on domestic ships given by a state statute, in cases maritime in their nature may be enforced in admiralty, is declared in The Richard Busteed [Id. 11,764]. See, also, Peyroux v. Howard, 7 Pet. [32 U. S.] 324. The district court, however, exercises the jurisdiction, thus acquired, according to the mode of proceeding in admiralty, not according to the state law. Davis v. New Brig [Case No. 3,643]. See, also, Boon v. The Hornet [Id. 1,-640]; Tree v. The Indiana [Id. 14,165].

Contra. A court of admiralty has no jurisdiction in rem to recover for work, labor, and materials furnished in building a ship, even though the state law gives a lien upon the vessel. The Norway [Case No. 10,359]. In the American Law Review (volume 5, p. 581) will be found an able and elaborate article by R. H. Dana, Jr., reviewing the whole subject of admiralty jurisdiction and the successive decisions on the question. The statute of California, declaring vessels subject to liens for materials or supplies, is valid and operative even in its application to a vessel supplied in her home port, so far as to entitle the claimant to payment out of surplus remaining in the registry after the satisfaction of maritime liens in preference to a mortgagee of the vessel. Francis v. The Harrison [Case No. 5,038], where the successive decisions of the supreme court concerning the enforcement of such liens by proceedings in rem are reviewed and explained. The supreme court of Indiana holds that the statute of that state, for the enforcement of liens upon domestic craft is, under the rulings in The Hine v. Trevor, 4 Wall. [71 U. S.] 555, void; that the jurisdiction of the federal courts being exclusive, the state courts can entertain no jurisdiction. Ballard v. Wiltshire, 28 Ind. 341; Vaughan v. McCullough, Id. 359; Claycomb v. Cohn, Id. 483. In each of these cases, the court directed the case to be dismissed.