## Case No. 1,370.
### BETTON v. VALENTINE.
[1 Curt. 168.] [1]

Circuit Court, D. Rhode Island. June Term, 1852.

INSOLVENCY—RHODE ISLAND LAW—ASSIGNEE UNDER LAW OF ANOTHER STATE—POWER TO AVOID CONVEYANCE.

The assignee of an insolvent debtor, appointed under the laws of the state of Massachusetts, does not so far represent creditors in the state of Rhode Island as to be able to avoid a conveyance of personal property in the latter state, good as against the insolvent, but invalid as against creditors, by the law of Rhode Island.

[Cited in Booth v. Clark, 17 How. (58 U. S.) 337; Re Bugbee, Case No. 2,115; Young v. Ridenbaugh, Id. 18,173; Olney v. Tanner, 10 Fed. 104; Re Werner, Case No. 17,416.]

[At law. Action of trover by George C. Betton, assignee in insolvency of Macy, against David M. Valentine. Verdict was given for defendant.] This was a motion by the plaintiff for a new trial. [Motion overruled, and judgment for defendant.]

The facts appear in the opinion of the court.

---

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

Mr. Betton, pro se.
Mr. Jenckes, for defendant.

CURTIS, Circuit Justice. The plaintiff brought an action of trover against the defendant, to recover damages for the conversion of a quantity of merchandise in a shop in the city of Providence. He proved that the goods had belonged to one Macy, who, on his own petition, was decreed to be an insolvent debtor, under the laws of the state of Massachusetts, and that the plaintiff, having been duly appointed his assignee, the commissioner of insolvency, having jurisdiction of the matter under the laws of that state, pursuant to the authority conferred upon him by those laws, conveyed to the plaintiff, as assignee for the benefit of creditors, all the estate, both real and personal, of the insolvent. On the part of the defendant it appeared that at the time when the plaintiff demanded the goods, he was in possession of them, claiming under a mortgage made in the city of Providence, by Macy, before filing his petition for the benefits of the insolvent law, to a trustee, conditioned for the security of three several debts, alleged to be due to the defendant and two other persons. The plaintiff averred this mortgage was fraudulent as against creditors, and so, invalid as against him, and the first question is, whether the plaintiff, as assignee in insolvency under the laws of Massachusetts, has such a title to these goods in Rhode Island, as will enable him to avoid a conveyance fraudulent as against creditors, and thus maintain this action.

It is a question of much interest and of more than ordinary importance. In the absence of a bankrupt law of the United States, many of the states have enacted insolvent laws for their own citizens, and the effect of those laws upon the property of the insolvents in other states is of much moment.

The 13 Eliz. c. 5. has been re-enacted by the legislature of Rhode Island, almost in the very words of that statute. Dig. 222. By force of this statute a conveyance of goods, made with intent to delay, hinder, or defraud creditors, is declared void as against those who, by such conveyance, might be hindered, delayed, or defrauded; that is, void as against creditors. As between the parties, the conveyance is valid, and effectual to pass the property. It is only as the representative of creditors, and by virtue of their rights, that the plaintiff can avoid this deed, and the question is, whether, in the state of Rhode Island, and in respect to personal property within that state, the plaintiff does thus represent creditors, and is clothed with their rights, so as to be able to avoid a deed, for a fraud on the creditors of the insolvent debtor.

This is a trial at the common law, and the rules of decision in this court are the laws of the state of Rhode Island, there being nothing in the constitution, treaties, or statutes

of the United States affecting the question; which is therefore to be determined here, upon the same principles as would govern the highest court of Rhode Island, sitting to administer the common and statute law of that state. Section 34 of the judiciary act [of September 24, 1789, (1 Stat. 92.)]

I mention this, because it seemed to be assumed in argument, that this court might allow some greater effect to the laws of Massachusetts, than a court of the state of Rhode Island could. But the only difference is, that this court is bound to take official notice and to have judicial knowledge of what the laws of Massachusetts are, while a court of the state must have such laws exhibited and proved to them; but, when shown, their effect upon this question, in one tribunal, should be precisely the same as in the other.

I proceed, therefore, to examine this interesting question, first premising, that I am not aware that it has ever been touched upon by the supreme court of Rhode Island, or that there is any thing peculiar in the legislation or customary law of this state bearing upon it. It must therefore be discussed upon those principles of general jurisprudence which may be found applicable to it.

It is known that great diversities of opinion have existed and do still exist, respecting the effect to be allowed to assignments by force of foreign bankrupt and insolvent laws. On the one side, it is the settled law of England that the assignment of a bankrupt's effects, under the bankrupt law of a foreign country, passes all his movable property and debts to the assignees, whose title is recognized as paramount. Solomons v. Ross, 1 H. Bl. 132, note; Ex parte Blakes, 1 Cox, Ch. 398; Hunter v. Potts, 4 term R. 182; Sill v. Worswick, 1 H. Bl. 691–694; Phillips v. Hunter, 2 H. Bl. 402; Quelin v. Moisson, 1 Knapp, 265, note; Selkrig v. Davis, 2 Rose, 291; Alivon v. Furnival, 1 Cromp. M. & R. 277.

This doctrine has been admitted to be one of universal obligation, and maintained with much learning and ability by Hon. Chancellor Kent, in Holmes v. Remsen, 4 Johns. Ch. 485. But at a later period, and after a wide survey of the decisions, he says, "The weight of American authority is decidedly the other way, and it may now be considered as part of the settled jurisprudence of this country, that personal property, as against creditors, has locality, and the lex loci rei sitae prevails over the law of the domicil with regard to the rule of preferences in the case of insolvent's estates." 2 Kent, Comm. 406.

An elaborate examination of the American decisions on this subject is not necessary; but it will be useful to show how far they have advanced in the direction of the question now to be determined, and to ascertain what principles they have settled. They have involved the rights of creditors, seeking payment by means of remedies afforded lege rei sitae, in conflict with the rights of the foreign assignees; and their general result may be stated to be, that the assignee, under a foreign system of bankrupt law, takes no title, which can prevail against the remedies afforded to creditors of the bankrupt, by the law of the place where the property or the chose in action of the bankrupt is attached, or levied on. The cases of Blake v. Williams, 6 Pick. 286; Milne v. Moreton, 6 Bin. 353; Saunders v. Williams, 5 N. H. 213; Lord v. The Watchman, [Case No. 17,-251;] Abraham v. Plestoro, 3 Wend. 538, contain elaborate descriptions of the principles and authorities bearing on that question.

In arriving at this result some courts have gone further than others in respect to the effect to be allowed to such an assignment. Some have rested upon the ground that the creditors who are citizens of their own states cannot be deprived of the remedies secured to them by their own laws; that the comity of nations does not require what is so inconsistent with the interest and policy of another state. Merrick's Estate, 2 Ashm. 485, 5 Watts & S. 20; Lowry v. Hall, 2 Watts & S. 129; Mulliken v. Aughinbaugh, 1 Penn. & W. 117. This class of cases, while it postpones the rights of foreign assignees to those of domestic creditors seeking the benefit of their own laws, admits that such assignees have a title. By some extension of the same doctrine it is made applicable in behalf of foreigners suing in the courts of the state, as in the case of Abraham v. Plestoro, 3 Wend. 538, while other courts, and among them the supreme court of the United States, have asserted the broad doctrine that a foreign involuntary assignment cannot pass the property which is not of the country in which such bankrupt law prevails. Thus Mr. Chief Justice Marshall, delivering the opinion of the court in Harrison v. Sterry, 5 Cranch, [9 U. S.] 302, says: "As the bankrupt law of a foreign country is incapable of operating a legal transfer of property in the United States, the remaining two-thirds of the funds are liable to the attaching creditors, according to the legal preference obtained by their attachments." And although the court were here only examining the point as between the assignee and attaching creditors, yet the ground on which the rights of the latter are vested, is a denial of all operation of the bankrupt law of England to pass property in the United States. See, also, Ogden v. Saunders, 12 Wheat. [25 U. S.] 262, 363, 364.

Having thus ascertained the doctrines of the American courts, it will be useful to consider what principles are maintained by the English courts as essential to the title of a foreign assignee, and how far those principles are admitted in our jurisprudence. Such an examination will lead at once to a determination of the question at bar.

The main principles upon which the English courts rest these titles are—

First. That principle of general jurispru-

dence, that personal property is deemed, by fiction of law, to be situated in the country in which the bankrupt has his domicil, and to follow the person of the owner. The application of this rule to the title of assignees in bankruptcy, is necessarily denied by the American cases, for if admitted, it makes the title of the assignee paramount to all rights of creditors. Every case, therefore, in which the right of an attaching creditor has been maintained is inconsistent with the application of this principle to such titles.

Second. The owner has a disposing power over his own property, wherever it may be situated, and the assignment of a bankrupt's effects may be considered as his own act, as it is in the execution of laws by which he is bound, and he voluntarily committed the act, which authorized the making of it. Goodwin v. Jones, 3 Mass. 517; 1 H. Bl. 437–439, note; 8 East, 314, 316, note.

If this position is admitted to be sound, it only places the assignee in bankruptcy in the same condition as an assignee under a voluntary assignment by the debtor. It refers the creation of the title to the disposing power of the owner, and consequently admits that no title passes which the owner could not convey. This, I understand, to be the extent of the English doctrine. Thus, in the leading case of Phillips v. Hunter, 2 H. Bl. 402, 403, the court say: "It is a proposition not to be disputed, that, previous to the bankruptcy, the bankrupts themselves might have transferred this property, though abroad, as absolutely as if it had been in their own tangible possession in this country; and it seems that the assignees, under their commission, were entitled, by the operation of law, to do with it after the bankruptcy, what the bankrupts themselves might have done." So in Hunter v. Potts, 4 Term R. 192, the court said: "The only question is whether the property in that island passed by the assignment, in the same manner as if the bankrupt had assigned it by his own voluntary act. And that it did so pass cannot be doubted, unless there was some positive law of that country to prevent it." See, also, Sill v. Worswick, 1 H. Bl. 690, 691; Holmes v. Remsen, 4 Johns. Ch. 470.

It is as the representative of the bankrupt, as possessing his title, under a transfer from him by virtue of his disposing power, that the title of the foreign assignee has been maintained. As the representative of creditors merely, as clothed with their peculiar rights, I am not aware that any court, with an exception presently to be noticed, has ever recognized a foreign assignee in bankruptcy or insolvency; and there seem to me to be insuperable difficulties in the way of doing so. Standing merely as the representative of creditors, appointed under the law of a foreign state, upon what principle of international jurisprudence is he to be distinguished from a foreign administrator. whose title is acknowledged nowhere, under the common law? He derives his authority from no principle of general jurisprudence, as he does when considered as representing the owner under the jus disponendi, but solely from the operation of a foreign local law, which not merely clothes him with the rights of creditors, but creates and regulates those rights.

Systems of bankrupt and insolvent law necessarily define the rights and powers of the assignee as against all third persons, and generally contain many provisions which, though deemed necessary to the policy of the system, are in themselves arbitrary, and find no place in general jurisprudence. Payments and transfers made by the bankrupt, or insolvent, within certain periods of time, or with certain intents, are declared void; and the title of the assignee dates from some act of the bankrupt, or of a public officer. These are rights in behalf of creditors, and as their representative, with which the assignee is clothed by the law under which he is appointed. They can have no place in any other system of law. and an attempt to enforce them in a foreign country would be universally allowed to be futile. But with what propriety can a foreign assignee be admitted to stand as the representative of creditors, when he is not allowed to bring with him the rights which really constitute that office, and for the enforcement of which he was appointed? And what consistency is there in holding that the foreign law cannot create or regulate the peculiar rights of creditors, which must depend solely on the law rei sitae, but that it may create an office and appoint a person to represent and enforce the rights which the law rei sitae, confers? That would be to prohibit the assignee from doing that which alone he was appointed to do, and permit him to do that which he was not appointed to do.

Such a result is inconsistent with sound reason, and would be likely to be productive of no small confusion and inconvenience in practice. It is held in Massachusetts, Butler v. Hildreth, 5 Metc. 49, that an assignee may affirm a sale, fraudulent and void as to creditors; and if he has power to avoid such a sale, it would be difficult to maintain that he has not also power to affirm it, and recover the consideration. Who is to be bound by such affirmance? Suppose he recovers the consideration from the fraudulent grantee, are the creditors in Rhode Island precluded from avoiding the sale? If they are, then the statute law of Rhode Island, which in express terms gives them the right to avoid it, is superseded and silenced by the law of another state. If they are not precluded, then it is clear the assignee does not represent them, and if not, how can he avoid the sale?

Besides, a bankrupt or insolvent law, viewed as operating on the rights of creditors, is a system of remedy. It takes out of the hands of the creditors the ordinary reme-

dial processes, and suspends the ordinary rights, which by law belong to creditors, and substitutes, in their place, a new and comprehensive remedy designed for the common benefit of all. The rights with which the assignee is clothed, as the representative of creditors, are to render this great and common remedy effectual. A law which gives the assignee power to represent the creditors is therefore, strictly, a law of remedy, and upon no sound principle can be permitted to operate beyond the territory subject to that law.

In coming to the conclusion that a foreign assignee in bankruptcy or insolvency cannot so far represent creditors, as to avoid a transfer good as against the insolvent and his representatives, but invalid as against creditors by the law of the place where the transfer was made and the property situated, I should have felt very little difficulty, if it were not for the decision of a highly respectable court, in the case of Hooper v. Tuckerman, 3 Sandf. 311. It was there decided that assignees, appointed under the laws of Massachusetts, as the plaintiff in this case was, might maintain a bill to set aside a conveyance made by the insolvents, and good as against them, but invalid as against creditors by the law of New York. The distinction relied on by the court, to take the case out of the operation of previous decisions in the courts of that state, was, that the debtors were deemed to be insolvent, and their property went into the custody of the law, and assignees were appointed in consequence of a petition voluntarily filed by themselves. That there is any real difference, in point of legal principle, between filing a petition and doing any other act of bankruptcy, to which the law has attached the same consequences, it does not seem to me easy to perceive. It has already been stated that the English doctrine is, that the act of bankruptcy being voluntary, the property of the bankrupt must be deemed to pass to the assignee with the consent of the bankrupt. But however this may be, the bankrupt's consent can be of no importance except in connection with his jus disponendi, and as affecting the title which he is presumed to, or does, create. His act, whether really voluntary, or only presumed to be so, can affect no title good as against himself, nor create rights in creditors, nor confer upon a third person power to represent them. And, therefore, I am unable to perceive the soundness of this distinction, or to concur in the opinion which seems to rest upon it.

While, therefore, I am not prepared to held that it is definitively settled by the supreme court of the United States that a foreign bankrupt or insolvent law can have no extraterritorial operation upon property, I am of opinion that the plaintiff in this case, merely as the representative of creditors, has no title, in Rhode Island, to property there, of which the insolvent, before filing his peti-

tion, made a transfer, good as against himself, and invalid as against creditors, by the statute law of that state.

The motion for a new trial is overruled, and there must be judgment on the verdict.